SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
Jill M. Pietrini (Cal. Bar No. 138335)
    jpietrini@sheppardmullin.com
Ryan S. Hilbert, Cal. Bar No. 210549
    rhilbert@sheppardmullin.com
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6055
Telephone:  (310) 228-3700 / Facsimile: (310) 228-3701

KRANE & SMITH
Ralph C. Loeb, Esq., Cal. Bar No. 124773
    ralph@kranesmith.com
16255 Ventura Boulevard, Suite 600
Encino, California 91436
Telephone:  (818) 382-4000 / Facsimile: (818) 382-4001

Attorneys for Plaintiff,
LIFE ALERT EMERGENCY RESPONSE, INC.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| LIFE ALERT EMERGENCY RESPONSE, INC. a California Corporation,<br><br>Plaintiff,<br><br>v.<br><br>CONNECT AMERICA.COM, LLC, a Delaware limited liability company, KENNETH GROSS, an individual, LIFEWATCH, INC., a New York Corporation, EVAN SIRLIN, an individual LIVE AGENT RESPONSE 1, LLC, a Florida limited liability company, GREG SMALL, an individual, TRILOGY INVESTMENT, LLC, a Florida limited liability company and DOES 1 to 10, inclusive,<br><br>Defendants. | Case No. CV13-03455 JAK (SSx)<br>Judge:  Hon. John A. Kronstadt<br><br>**OPPOSITION OF PLAINTIFF LIFE ALERT EMERGENCY RESPONSE, INC. TO DEFENDANT EVAN SIRLIN'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**<br><br>Judge:  Hon. John A. Kronstadt<br><br>Date:        December 2, 2013<br>Time:       8:30 a.m.<br>Courtroom: Ctrm 750- Roybal Building<br><br>Complaint Filed: May 14, 2013<br>FAC:                  August 28, 2013 |

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ...................................................................................... ii

II.   STATEMENT OF FACTS RELEVANT TO PERSONAL JURISDICTION ............................................................................................. 1

    A.    LifeWatch's Infringement of Life Alert's Famous Marks ............... 1

    B.    Sirlin's Conduct Through LifeWatch's Phone Scam ........................ 2

III.  SIRLIN'S MOTION TO DISMISS SHOULD BE DENIED ........................ 6

    A.    The Court Has Specific Jurisdiction Over Sirlin By Virtue of Its Specific Jurisdiction Over LifeWatch ............................................... 8

    B.    The Court Has Specific Jurisdiction Over Sirlin as an Individual ...... 10

        a.    Life Alert Has Alleged That Sirlin Purposefully Directed Activities Toward California ................................................. 11

        b.    Life Alert Has Alleged That Its Causes of Action for Trademark Infringement, Trademark Dilution, and Unfair Competition Arise Out Of Sirlin's California-Related Contacts ................................................................................ 13

        c.    This Court's Exercise of Personal Jurisdiction Over Sirlin Is Reasonable ......................................................................... 14

IV.  CONCLUSION ............................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*Adobe Sys. v. Childers*
  2011 U.S. Dist. LEXIS 14534 (N.D. Cal. Feb. 14, 2011) .................................... 8

*Ballard v. Savage*
  65 F.3d 1495 (9th Cir.1995) ................................................................... 6, 11, 13

*Brayton Purcell, LLP v. Recordon & Recordon*
  606 F. 3d 1124 (9th Cir. 2010) ..................................................................... 7

*Burger King Corp. v. Rudzewicz*
  471 US 462 (1985) ........................................................................... 10, 11, 14

*Committee for Idaho's High Desert v. Yost*
  92 F.3d 814 (9th Cir. 1996) ............................................................................ 8

*Core-Vent Corp. v. Nobel Industries AB*
  11 F.3d 1482 (9th Cir. 1993) ........................................................................ 15

*Data Disc, Inc. v. Systems Technology Assoc., Inc.*
  557 F.2d 1280 (9th Cir. 1977) .......................................................... 6, 7, 13, 14

*Goodyear Dunlop Tires Operations, S.A. v. Brown*
  131 S. Ct 2846 (2011) .................................................................................. 10

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*
  328 F.3d 1122 (9th Cir. 2003) ....................................................................... 6

*Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Ltd. Partnership*
  34 F.3d 410 (7th Cir. 1994) .......................................................................... 12

*Int'l Shoe Co. v. Wash., Office of Unemployment Comp. & Placement*
  326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945) ........................................... 7

*Panavision Int'l, L.P. v. Toeppen*
  141 F.3d 1316 (9th Cir. 1988) ............................................................ 7, 12, 13

*Partners for Health & Home, L.P. v. Seung Wee Yang*
  2011 U.S. Dist. LEXIS 130921 (C.D. Cal. 2011) ........................................... 8

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Playboy Enters. v. Chen*
   1997 U.S. Dist. LEXIS 21916 (C.D. Cal. 1997) .............................................. 8, 10

*Rano v. Sipa Press, Inc.*
   987 F.2d 580 (9th Cir. 1993) ................................................................................ 14

*World-Wide Volkswagen Corp. v. Woodson*
   444 U.S. 286 (1980) ............................................................................................. 11

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*
   433 F3d 1199 (9th Cir. 2006) (en banc) ............................................................... 10

<u>Other Authorities</u>

Fed. R. Civ. P. 4(k)(1)(A) ............................................................................................ 7

Fed. R. Civ. P. 12(b)(2) ............................................................................................... 1

## I. INTRODUCTION

Plaintiff Life Alert Emergency Response, Inc. ("Life Alert") respectfully requests that the Court deny Defendant Evan Sirlin's ("Sirlin") Motion to Dismiss for Lack of Personal Jurisdiction and for Failure to State a Claim Upon Which Relief Can Be Granted pursuant to Federal Rule of Civil Procedure 12(b)(2) (the "Motion").

In his Motion, Sirlin attempts to pull the proverbial wool over the Court's eyes by denying that Sirlin has any connection to California. The Court should not accept Sirlin's transparent attempt to avoid the jurisdiction of this Court despite his direct involvement in and supervision over a scam directed – in part – to unsuspecting elderly residents of California. Indeed, Sirlin, as CEO of Defendant LifeWatch, Inc. ("LifeWatch"), and as the person who is otherwise responsible for the acts of LifeWatch, has been targeting elderly California residents for years. At one point, Sirlin even attempted to sell customer accounts LifeWatch had obtained through its scam to Life Alert by directly contacting Life Alert's attorneys in California. Even though Sirlin submitted a declaration in support of his Motion, nowhere in that declaration does he address the above-referenced jurisdictional facts, much less the salient allegations in Life Alert's FAC. Those facts must be considered true for the purposes of deciding this Motion.

For these reasons and the reasons below, Life Alert respectfully requests that the Court deny the Motion.

## II. STATEMENT OF FACTS RELEVANT TO PERSONAL JURISDICTION

### A. LifeWatch's Infringement of Life Alert's Famous Marks

Defendant LifeWatch is a direct competitor of Life Alert, providing personal emergency response services and related products for seniors. [First Amended Complaint ("FAC") ¶ 54.] Sirlin, as the CEO of LifeWatch, controls the operation and business of LifeWatch, including LifeWatch's advertising. [*Id.*] As set forth in

the FAC, Sirlin, through LifeWatch, has a history of infringing upon Life Watch's Famous Marks.[1]

LifeWatch has been on notice of Life Alert's Famous Marks, since at least as early as 2008, when LifeWatch infringed those marks in connection with a prior lawsuit brought by Life Alert against LifeWatch in the Central District of California. [FAC ¶¶ 55-59.] Despite that express knowledge, LifeWatch has continued to infringe Life Alert's Famous Marks, specifically, by using the phrase "You're never alone with a LifeWatch Medical Alarm" in its advertising, including on its website and video commercials. [FAC ¶ 61.] LifeWatch's use is likely to cause confusion, or to cause mistake or deceive consumers who are likely to believe that LifeWatch's emergency response services originate from the same source as Life Alert, or that it is otherwise affiliated, connected or associated with Life Alert, or sponsored, approved by Life Alert, when in fact it is not. [*Id*.] Importantly, Life Alert alleges that Sirlin authorized and approved the above alleged infringement of Life Alert's trademarks by LifeWatch. [FAC ¶ 62.]

### B. Sirlin's Conduct Through LifeWatch's Phone Scam

Life Alert alleges that LifeWatch has been obtaining customers for personal emergency response services through illegal and fraudulent telemarketing operations (the "Phone Scam") and derived income from those customers, including California residents. [FAC ¶ 64.] The Phone Scam has included, but is not limited to, the following conduct:

---

[1] For purposes of this Motion, the term "Life Alert's Famous Marks" refers to Life Alert's trademarks identified in U.S. Registration Nos. 3,255,726 (I'VE FALLEN AND I CAN'T GET UP!), 2,552,506 (LIFE ALERT), 3,212,604 (LIFE ALERT YOU ARE NEVER ALONE 24/7 & Design), and 4,053,816 (LIFE ALERT MOBILE), and Life Alert's common law rights in the LIFE ALERT EMERGENCY RESPONSE, INC. and the LIFE ALERT THE LIFE SAVING NETWORK marks, as well as Life Alert's I'VE FALLEN AND I CAN'T GET UP! and HELP, I'VE FALLEN AND I CAN'T GET UP! marks. [FAC ¶¶ 18-29.]

- Targeting seniors with unsolicited phone calls made with recorded messages (commonly known as "robo-calling"), including phone calls to persons on government "Do Not Call" lists. [FAC ¶ 64(a).]
- Hiring salespersons with advertisements referencing Life Alert's trademark "I've Fallen and I Can't Get Up!" [FAC ¶ 64(b).]
- Providing salespersons with telemarketing scripts that referenced Life Alert's trademark "I've Fallen and I Can't Get Up!" [FAC ¶ 64(c).]
- Having salespersons call potential customers for personal emergency response systems and falsely stating that they work with "Life Alert" or with the "I've Fallen and I Can't Get Up!" company [*i.e.* Life Alert]. [FAC ¶ 64(d).]
- Using false caller identifications in connection with phone calls to potential customers for personal emergency response systems. [FAC ¶ 64(e).]
- Leading customers to believe they are Life Alert and not disclosing that LifeWatch was the true personal emergency response companies with which the salespersons were affiliated, until after the solicited person(s) purchased emergency responses services. [FAC ¶ 64(f).]

Sirlin was well aware of LifeWatch's involvement in the Phone Scam by virtue of the Amended Complaint filed in November 2012 by the State of Indiana against LifeWatch, Worldwide Info Services, Inc. ("Worldwide") (which is also a defendant in this case), and others. [*See* FAC ¶¶ 70-75; Declaration of Ralph C. Loeb ("Loeb Decl.") ¶ 1, Ex. 1.]  The State of Indiana alleged that LifeWatch violated the Indiana Telephone Solicitation of Consumers Act and the Regulation of Automatic Dialing Machines Act. [*See* FAC ¶¶ 70-75; Declaration of Ralph C. Loeb ("Loeb Decl.") ¶ 1, Ex. 1.]

As part of that action, the State of Indiana submitted a script used in connection with the Phone Scam. [Loeb Decl. ¶ 2, Ex. 2; FAC ¶ 73.] This script contained blatant infringement of Life Alert's Famous Marks. [Loeb Decl. ¶ 2, Ex. 2; FAC ¶ 73.] The script states, in relevant part:

> "You are probably familiar with the medical alert system and how it works, you know the TV commercial 'I'VE FALLEN AND I CAN'T GET UP!'? or maybe you've seen our medical alert system In NewsDay, The Washington Post or US News.
>
> "It's the same system as seen on TV and the way it works is simple."

[Loeb Decl. ¶ 2, Ex. 2; FAC ¶ 73.]

Sirlin and LifeWatch also had express knowledge of the activities of the telemarketers with whom they contracted in furtherance of the Phone Scam.[2] According to a Telemarketing Services Agreement between LifeWatch and Defendant Worldwide, every new Phone Scam customer solicited by Worldwide required express approval by LifeWatch. [Loeb Decl. ¶ 3, Ex. 3.] Paragraph 1.2 of that agreement states, in relevant part:

> If a consumer orders [LifeWatch's] Products, [Worldwide] shall obtain the consumer's express verifiable authorization prior to causing billing information to be submitted for payment, or collecting the consumer's payment information for the Products . . . . [Worldwide] shall then submit the customer's order of [LifeWatch's] Products to [LifeWatch's] principal executive officer for acceptance or rejection by [LifeWatch].

[*Id.*] As CEO of LifeWatch, Sirlin was LifeWatch's "principal executive officer." Indeed, Sirlin also was identified as the "President" of LifeWatch on the signature block on the Telemarketing Services Agreement, as well as the person who was

---

[2] To date, Sirlin and LifeWatch have refused to identify those telemarketers with whom they have or had relationships, and have refused to provide any agreement with any telemarketer. Life Alert obtained the Telemarketing Services Agreement referred to in the text as a result of the lawsuit brought against LifeWatch by the State of Indiana.

designated to accept all "notices, demands and other communications" on behalf of LifeWatch. [*Id*.]

LifeWatch has obtained a number of customers, including California customers, as a result of its work with telemarketers. LifeWatch's involvement in the phone scam is evident from the products unsuspecting consumers receive as a result of the scam.

In January 2013, Barry Gates, a sales manager for Life Alert received a robo-call from a telemarketer who used Life Alert's Famous Marks as part of a telemarketing ploy to sell Mr. Gates a personal medical response product. [Declaration of Barry Gates ["Gates Decl."] ¶ 4.] Mr. Gates' caller ID identified the call as coming from Lodi, California. [*Id*.] **Mr. Gates is a California resident**. [*Id*. ¶ 1.] He is also on the Government's "Do Not Call" List. [*Id*. ¶ 4.]

The recording began by describing how senior citizens were falling down at home and unable to get help. [Gates Decl. ¶ 4.] When Mr. Gates pushed "1" on his phone, he was connected to a live operator. That operator told Mr. Gates that the company whose products he was selling was the "I've Fallen and I Can't Get Up" company from TV. [*Id*. ¶ 6.] The operator also said that that the company was endorsed by the American Heart Association, which LifeWatch is not. [*Id*.] Later, the operator identified that company as "Lifewatch USA." [*Id*. ¶ 7.] Mr. Gates purchased one of the products offered by the telemarketer. [*Id*. ¶ 8.]

When Mr. Gates finally received his medical alert device in the mail in California, he discovered that inside the box containing the product was a form letter signed by Evan Sirlin as CEO of LifeWatch. [Gates Decl. ¶ 12; FAC ¶¶ 81-82; Ex. I to FAC.] This demonstrates that Sirlin was directing his sales efforts to California residents.

Beginning at least in or about June 2012 and continuing at least through June 2013, Life Alert alleges that LifeWatch received tens of thousands of Phone Scam customers from various telemarketers with whom it had contracts. [FAC ¶¶ 66-68.]

Many of these customers were California residents. [*Id.*] Life Alert *conservatively* estimates that LifeWatch has obtained at least four hundred phone scam customers a week from at least August 2012 through March 2013 – or about 12,800 customers. [FAC ¶ 65.] Based on figures provided by the U.S. Department of Health & Human Services, Life Alert also estimates that approximately ten percent of those customers – or 1,280 – reside in California. [Loeb Decl. ¶ 4.] Life Alert also has alleged that LifeWatch's efforts to solicit customers through the Phone Scam has continued. [FAC ¶ 65.] Using the same numbers as before, this means that LifeWatch has likely obtained *at least* another 12,800 customers since March 2013, for a total of 25,600 customers, 2,560 of which are likely California residents.

Sirlin and LifeWatch have been so successful in obtaining customers through the Phone Scam that, at one point, Sirlin contacted Life Alert's attorneys in California to try to sell Life Alert customer accounts it had obtained through the Phone Scam. [FAC ¶ 91; Loeb Decl. ¶ 5.] More specifically, in an email to Life Alert's attorney in California, Sirlin stated that "we can do 1,000+ in a month or less to get started." [Loeb Decl. ¶ 5, Ex. 5.]

## III. SIRLIN'S MOTION TO DISMISS SHOULD BE DENIED

A plaintiff bears the burden of establishing that personal jurisdiction exists over a defendant. *E.g., Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1128-29 (9th Cir. 2003) (citation omitted). The court may consider evidence presented in affidavits to assist it in its determination and may order discovery on the jurisdictional issues. *Data Disc, Inc. v. Systems Technology Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). However, when a district court acts on a defendant's motion to dismiss without holding an evidentiary hearing, the plaintiff need make only a *prima facie* showing of jurisdictional facts to withstand the motion to dismiss. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir.1995) (citations omitted). For the purposes of Plaintiff's *prima facie* showing of personal jurisdiction, uncontroverted allegations in the FAC must be taken as true and

conflicts between the facts contained in the parties' affidavits must be resolved in Plaintiff's favor.³ *Brayton Purcell, LLP v. Recordon & Recordon*, 606 F. 3d 1124, 1130 (9th Cir. 2010). The facts in the FAC have not been controverted, and it would be too late to do so for the first time in Sirlin's reply, and thus must be taken as true for the purpose of deciding this Motion.

District courts have the power to exercise personal jurisdiction to the extent of the law of the state in which they sit. Fed. R. Civ. P. 4(k)(1)(A); *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1988). For a court to exercise personal jurisdiction over a nonresident defendant consistent with due process, the defendant must have sufficient "minimum contacts" with the forum state so that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945).

Using the "minimum contacts" analysis, a court may obtain either general jurisdiction or specific jurisdiction over a nonresident defendant. *Data Disc, Inc.*, 557 F.2d at 1287. If the defendant's activities are insufficient to subject him to general jurisdiction, then the court looks to the nature and quality of the defendant's contacts in relation to the cause of action to determine whether specific jurisdiction exists. *Id*.

Here, there is no question that this Court has specific jurisdiction over Sirlin.

---

³ In the event the Court is inclined to grant Sirlin's Motion on the existing record, Life Alert respectfully requests that it be allowed to conduct narrowly-tailored discovery on this discrete jurisdictional issue before the Court does so. A court may permit discovery to aid in determining whether it has *in personam* jurisdiction. *Data Disc, Inc.*, 557 F.2d at 1285-86 n.1. "In granting discovery, the trial court is vested with broad discretion and will not be reversed except upon the clearest showing that denial of discovery results in actual and substantial prejudice to the complaining litigant." *Id*. "Discovery may appropriately be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Id*.

### A. The Court Has Specific Jurisdiction Over Sirlin By Virtue of Its Specific Jurisdiction Over LifeWatch

Sirlin is subject to specific jurisdiction of this Court by virtue of this Court's specific jurisdiction over LifeWatch. LifeWatch does not dispute that the Court has specific jurisdiction over it.

It is well understood that "personal jurisdiction over the individual may be exercised based upon "the individual's control of, and direct participation in the alleged activities" of the corporation. *Adobe Sys. v. Childers*, 2011 U.S. Dist. LEXIS 14534, at *16 (N.D. Cal. Feb. 14, 2011) (quoting *Wolf Designs, Inc. v. DHR & Co.*, 322 F. Supp. 2d 1065 (C.D. Cal. 2004)). In order to establish personal jurisdiction over an individual:

> A plaintiff may show that a corporate employee is the moving, active, conscious force behind the infringing activity by demonstrating that the corporate officer directs, controls, ratifies, or participates in the infringing activity, or acts as the guiding spirit and the active directing hand in full charge of [the corporation's] operations.

It is well established that directors or officers may be held liable for corporate infringement if they "direct" a corporation in committing infringement or personally commit the acts. *Committee for Idaho's High Desert v. Yost*, 92 F.3d 814, 823-24 (9th Cir. 1996); *Partners for Health & Home, L.P. v. Seung Wee Yang*, 2011 U.S. Dist. LEXIS 130921, *9-10 (C.D. Cal. 2011) ("An individual who personally directs a corporation in committing trademark infringement, or who personally commits those acts, is personally liable for that infringement.") (internal quotations and citations omitted); *Playboy Enters. v. Chen*, 1997 U.S. Dist. LEXIS 21916, *41-42 (C.D. Cal. 1997) ("Where, as here, a sole shareholder, officer and director of a corporation participates in violations of the Lanham Act, the corporate principal is personally liable. Such liability in no way depends on piercing the corporate veil or alter ego.")

Here, there is no question that Sirlin directs LifeWatch's efforts, including in

SMRH:412368229.1 -8-

connection with its infringing participation in the Phone Scam. As explained above, each Phone Scam customer obtained through LifeWatch's relationship with Defendant Worldwide had to be approved by Sirlin. [Loeb Decl. ¶ 3, Ex. 3.] Indeed, Sirlin also was identified both as the signatory on the Telemarketing Services Agreement between LifeWatch and Worldwide, as well as the person who was designated to accept all "notices, demands and other communications" on behalf of LifeWatch. [*Id*.] Moreover, when Life Alert employee Barry Gates purchased a medical alert response system from a robo-call that originated *from California*, included along with the system he received *in California* was a letter signed by Sirlin himself. [Gates Decl. ¶ 12; FAC ¶¶ 81-82; Ex. I to FAC.] As if this was not enough, it was Sirlin, not anybody else from LifeWatch, who contacted Life Alert's attorneys in California in an attempt to sell Life Alert over 1,000 customer accounts a month.[4] [Loeb Decl. ¶ 5, Ex. 5.]

Sirlin suggests that LifeWatch is a large corporation of which he is only a part. Sirlin even states that "[a]s LifeWatch's CEO," he "report[s] to the board of directors . . . ." [Mot.at 14-15; Declaration of Evan Sirlin ¶ 2.] At the same time Sirlin makes these statements, however, he has not offered a shred of evidence to support them, including, for example, the identities of the individuals who allegedly sit on LifeWatch's Board. Indeed, despite Sirlin's suggestion about the alleged size of LifeWatch, there is no evidence to indicate that LifeWatch is anything more than a small, closely held corporation with no one other than Sirlin at the helm.

---

[4] In addition to the allegations in the text, Life Alert alleges that Sirlin knew he and LifeWatch were obtaining the Phone Scam Customers through the Phone Scam Operations since at least August 2012. [*See* FAC ¶¶ 64, 69.] Life Alert further alleges that Sirlin became aware that he and LifeWatch were obtaining Phone Scam Customers through the Phone scam based on: (1) the tremendous amount of cancellations and return of equipment; (2) an exceedingly high attrition rate among the Phone Scam Customers; and (3) the Amended Complaint filed by the State of Indiana against LifeWatch. [*See* FAC ¶¶ 70-74.] Nowhere in his Declaration does Sirlin attempt to controvert these allegations.

1 Tellingly, when Sirlin applied to register LifeWatch to do business in the State of
2 Florida in August 2010, he did not identify a single director of LifeWatch and listed
3 himself as its only officer. [Loeb Decl. ¶ 6, Ex. 6.]

4       Sirlin's claim that he is not a "guiding spirit" behind the infringement also is
5 unavailing. [Mot.at 14-15.] Once again, Sirlin does not offer a shred of evidence to
6 support this assertion, other than the vague and unsupported statement in his self-
7 serving declaration that he reports to a "board of directors." [Declaration of Evan
8 Sirlin ¶ 2.] Sirlin's arguments regarding piercing the corporate veil and the alter ego
9 theory also are unavailing, in addition to being irrelevant to the inquiry at hand. *See*
10 *Playboy Enters. v. Chen* 1997 U.S. Dist. LEXIS 21916, at *41-42.

11       In short, Life Alert's allegations concerning Sirlin and LifeWatch are more
12 than sufficient to establish Sirlin's involvement in LifeWatch's infringing operation.
13 Because of this, the Court has specific jurisdiction over Sirlin.

14       **B.    The Court Has Specific Jurisdiction Over Sirlin as an Individual**

15       In addition to having specific jurisdiction over Sirlin by virtue of his
16 relationship to LifeWatch, this Court also has specific jurisdiction over Sirlin as an
17 individual. Even if Sirlin's contacts with California are not sufficiently "continuous
18 and systematic," he is still subject to the jurisdiction of this Court on claims related
19 to his activities or contacts here. *See Goodyear Dunlop Tires Operations, S.A. v.*
20 *Brown*, 131 S. Ct 2846, 2855 (2011).

21       In order to establish specific jurisdiction over Sirlin, Life Alert must show
22 that: (1) Sirlin purposefully directed activities toward residents of the forum state or
23 otherwise established contacts with California; (2) Life Alert's causes of action arise
24 out of or result from Sirlin's California-related contacts; and (3) California's
25 exercise of personal jurisdiction over Sirlin in this case is reasonable. *Burger King*
26 *Corp. v. Rudzewicz*, 471 US 462, 477–478 (1985); *Yahoo! Inc. v. La Ligue Contre*
27 *Le Racisme Et L'Antisemitisme,* 433 F3d 1199, 1206 (9th Cir. 2006) (en banc). Life
28 Alert can meet each of these elements.

### a. Life Alert Has Alleged That Sirlin Purposefully Directed Activities Toward California

The purposeful availment requirement ensures that a nonresident defendant will not be haled into court based upon "random, fortuitous or attenuated" contacts with the forum state. *Burger King Corp.*, 471 U.S. at 475. This requirement is satisfied if the defendant "has taken deliberate action" toward the forum state. *Ballard*, 65 F.3d at 1498. It is not required that a defendant be physically present or have physical contacts with the forum, so long as his efforts are "purposefully" directed toward forum residents. *Id*.

As explained more fully above, Sirlin has purposefully directed his activities to California by obtaining thousands of California residents as customers through the use of his Phone Scam. This is evidenced by the personal medical device product that LifeWatch sold to Barry Gates and that included a signed letter from Sirlin himself. Indeed, even though this letter was specifically referenced in, and attached to, Life Alert's FAC, nowhere in Sirlin's Motion or supporting declaration does he even reference it. By targeting unsuspecting elderly California consumers in order to sell LifeWatch's competing products, Sirlin necessarily should have reasonably anticipated being haled into court here. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) ("the foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there."). That Sirlin may have personally targeted California customers in his role as the CEO of LifeWatch does not change this result.

Sirlin also has directed his activities to California by contacting Life Alert's attorney in California in order to sell Life Alert customer accounts LifeWatch had obtained through the Phone Scam. [Loeb Decl. ¶ 5, Ex. 5.] Indeed, Sirlin even emailed Life Alert's California attorney and offered to sell Life Alert over 1,000 customer accounts a month "to get started." [*Id*., Ex. 5.]

Sirlin even has directed his activities to California by intentionally choosing to infringe Life Alert's Famous Marks here.  Sirlin has been on notice of Life Alert's Famous Marks since at least 2008.  [FAC ¶¶ 55-56, 60.]  Despite that knowledge, Sirlin, as CEO of LifeWatch, chose to infringe Life Alert's Famous Marks by using the phrase "You're never alone with a LifeWatch Medical Alarm" in LifeWatch's advertising, including on its website and video commercials. [FAC ¶ 61.]  Sirlin also chose to infringe those marks in connection with his involvement in the Phone Scam.  Sirlin knew that such infringements would have the effect of harming Life Alert in the State in which it is located and in which Sirlin knows it is located.  *See Panavision Int'l*, 141 F.3d at 1322 (defendant directed activity to California by scheming to infringe plaintiff's marks, which defendant knew, would have the effect of injuring plaintiff in California where he was located); *see also Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Ltd. Partnership*, 34 F.3d 410 (7th Cir. 1994) (finding personal jurisdiction where defendant's infringement of plaintiff's trademarks harmed plaintiff in the state in which it was located).

In support of Sirlin's claim that he has not purposefully directed his activities to California, Sirlin states that he has never resided in California, does not maintain an office in California, does not hold real property in California, and does not maintain bank accounts or other financial accounts in California, among other things.  [Declaration of Evan Sirlin ¶¶ 6-9.[5]]  This information is irrelevant. Tellingly, nowhere in his declaration does Sirlin deny that he and his company have targeted California residents for years.

This factor, therefore, weighs in favor of personal jurisdiction.

---

[5]  Interestingly, rather than say that the facts in his declaration are simply "true and correct," Sirlin qualifies those facts by saying that such facts are based solely on his "information and belief."  [Declaration of Evan Sirlin at 3.]

      b.    **<u>Life Alert Has Alleged That Its Causes of Action for Trademark Infringement, Trademark Dilution, and Unfair Competition Arise Out Of Sirlin's California-Related Contacts</u>**

The second requirement for specific, personal jurisdiction is that the claim asserted in the litigation arises out of the defendant's forum-related activities. *Panavision Int'l*, 141 F.3d at 1322. The key is to determine if Life Alert would not have been injured "but for" Sirlin's conduct directed toward Life Alert in California. *See Ballard*, 65 F.3d 1495 at 1500.

Life Alert's First Amended Complaint makes clear that, through the Phone Scam – of which Sirlin had knowledge – LifeWatch has obtained and continues to target and obtain California residents as customers. [FAC ¶¶ 66-68.] But for Sirlin's involvement in this scam, and LifeWatch's independent infringement of Life Alert's Famous Marks, he would not be a party to this lawsuit. Sirlin and LifeWatch are continuing to obtain customers through the Phone Scam even to this day. [FAC ¶ 65.] Until and unless Sirlin's and LifeWatch's efforts to cease their conduct in connection with the Phone Scam, including through the repeated use of robo-calls to prospective customers in California and elsewhere, Life Alert will continue to suffer harm.

Sirlin's arguments in the Motion on this topic are unpersuasive. Sirlin claims that "the mere fact that allegedly infringing activity may occur in the forum state does not constitute purposeful availment of forum law and, thus, the 'forum-related' contact on Mr. Sirlin's part." [Mot. at 10:7-14.] Contrary to Sirlin's claim, however, Life Alert has demonstrated that Sirlin and LifeWatch are specifically targeting California customers like Barry Gates. At a minimum, where, as here, the jurisdictional facts are "intertwined with the merits of the action," determination of the jurisdictional issue may determine the merits of the action. *Data Disc, Inc.*, 557 F.2d at 1285-86 n.2. In such a case, "it is preferable that this determination be made

at trial, where a plaintiff may present his case in a coherent, orderly fashion and without the risk of prejudicing his case on the merits." *Id*.

The case Sirlin cites in support of his argument – *Rano v. Sipa Press, Inc.*, 987 F.2d 580 (9th Cir. 1993) – is inapposite.  In that case, the issue was whether a European-based party to a contract was subject to jurisdiction in California because the other party to that contract had subsequently moved here. *Id*. at 587.  Affirming the district court's ruling of dismissal for lack of jurisdiction against the individual defendant, the Ninth Circuit reasoned that "litigation against an *alien defendant* requires a higher jurisdictional barrier than litigation against *a citizen from a sister state*." *Id*. at 588.  (emphasis added).

The facts of *Rano* could not be more remote from the facts at hand.  First, Sirlin is not a foreign defendant, but rather a defendant of a sister state.  Second, the consumers targeted by the Phone Scam have always been California residents, and Life Alert has always been a California corporation, facts of which Sirlin has been on notice since as early as 2008.

This factor also, therefore, weighs in favor or personal jurisdiction.

### c. This Court's Exercise of Personal Jurisdiction Over Sirlin Is Reasonable

For jurisdiction to be reasonable, it must comport with "fair play and substantial justice." *Burger King*, 471 U.S. at 476. "Where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id*. at 476-77.

Contrary to Sirlin's arguments in his Motion, this Court's jurisdiction over him is reasonable, and, quite frankly, necessary.  By purposefully targeting customers in California through the Phone Scam, Sirlin was given fair notice through his course of dealing that he might be subject to a suit in this district. *See*

1 *Burger King*, 471 U.S. at 486-87. Furthermore, this Court has an interest in adjudicating this dispute and holding Sirlin accountable for his actions. *Core-Vent Corp. v. Nobel Industries AB*, 11 F.3d 1482, 1489 (9th Cir. 1993) ("California maintains a strong interest in providing an effective means of redress for its residents who are tortiously injured"). Indeed, contrary to his self-serving declaration, Sirlin extensively interjected himself into this state when he targeted numerous elderly California residents with his Phone Scam. This is demonstrated by the letter those residents received from Sirlin upon receiving a product purchased from LifeWatch. [Gates Decl. ¶ 12; FAC ¶¶ 81-82; Ex. I to FAC.] Sirlin also interjected himself into California by attempting to sell Life Alert thousands of accounts here. [Loeb Decl. ¶ 5, Ex. 5.]

This factor also weighs in favor of personal jurisdiction.

## IV. CONCLUSION

For the foregoing reasons Sirlin's Motion should be denied in its entirety.

Dated: November 5, 2013

KRANE & SMITH

By: /s/ Ralph C. Loeb
Ralph C. Loeb

Attorneys for Plaintiff LIFE ALERT EMERGENCY RESPONSE, INC

SHEPPARD MULLIN RICHTER & HAMPTON LLP
Jill M. Pietrini
Ryan S. Hilbert
Attorneys for Plaintiff LIFE ALERT EMERGENCY RESPONSE, INC